THE WHEELER SCHOOL AND LIBRARY v. ATTORNEY GENERAL

SUPERIOR COURT    NEW LONDON COUNTY    FILE No. 18018

Memorandum filed July 16, 1948.

*Hibberd R. Norman,* of Norwich, for the Plaintiff.

*Bernard A. Kosicki,* of Hartford, Assistant Attorney General, and *Herbert W. Rathbun,* of Westerly, R. I., for the Defendant.

TROLAND, J. In this action The Wheeler School and Library, a Connecticut corporation located at North Stonington, seeks authority from this court either to divert the income of its funds from the specific uses for which they were granted or, in lieu thereof, to turn its assets over to the state board of education.

In its complaint the plaintiff assumes that authority exists under the provisions of § 830 of the General Statutes, to justify the relief asked for. The quoted section of the General Statutes authorizes the state board of education to receive in the name of the state any money or property given or bequeathed to the State or to said board for educational purposes, etc.

The relevant facts in this case are as follows: The plaintiff was incorporated in 1899 by resolution of the General Assembly. Among its corporate powers was the establishment and maintenance in said town of North Stonington of a school for the education of young persons residing in said town of North Stonington in studies or courses more advanced than are usually taught in district schools, including preparing scholars for college or universities, and also to found and maintain in said town of North Stonington a circulating and consulting library for the use of all inhabitants of said town under such rules and regulations as to dues and otherwise as the board of directors may establish.

Henry D. Wheeler, late of North Stonington, a public spirited citizen much interested in his town and the welfare of its

people, was instrumental in securing the incorporation of the plaintiff: In his life time, Henry D. Wheeler erected a school and library building in the town of North Stonington and maintained therein a school for some years, tuition being free and a small charge being made for incidental expenses. In 1901 Henry D. Wheeler executed a will bequeathing and devising to the corporation a large amount of property. In 1906 Mr. Wheeler died and his will was duly admitted to probate. The Wheeler School and Library then owned no property. That bequeathed and devised to it by him amounted at his death to about $273,000 in value. At the present time the property of the corporation consists of the school and library building, a substantial granite structure with four classrooms on the ground floor, and a second floor used as a library and assembly hall, a three story dormitory, a residence of two stories and an athletic field and wood land, there being about seventy-five acres of land. The securities of the corporation have a market value of about $195,000. Its average income for the last five years has been $9,800.

For many years the school has afforded secondary education to young persons residing in the town of North Stonington. The school closed at the end of the term in June 1944, and has not reopened since.

The closing was caused, in part, by a controversy between the trustees of the Wheeler School and the board of education of the town of North Stonington over the principal of The Wheeler School. The principal of The Wheeler School, over whom the difficulties arose, has since resigned.

At the present time, and for several years past, there have been about fifty eligible students for whom the town of North Stonington is required by law to furnish high school education. The Wheeler School is not able to furnish an approved high school education to all such pupils unless part of the cost of their education is defrayed by the town as tuition. Since the controversy over the principal and the closing of the school, the town of North Stonington has furnished high school education for its young people by sending them to the high school in the town of Stonington. This has caused the town of North Stonington large additional expense to transport such pupils to the high school in Stonington. During the last year of its operation the town of North Stonington paid to The Wheeler School $4900 as tuition for forty-nine pupils.

The town of North Stonington is desirous that the school be reopened and that the wishes of Henry D. Wheeler be carried out so that children residing and living in said town may have the benefit at home of a school for secondary education.

The authorities concerned with education and the financing thereof in the town of North Stonington are willing and desire to pay a reasonable sum toward the operation of the Wheeler School to enable it to accept all pupils now eligible for high school education in said town.

The evidence clearly indicates that with its resources The Wheeler School can be operated as a small high school, selecting its pupils from those eligible in the town of North Stonington. If the town of North Stonington will pay a reasonable contribution as tuition, the Wheeler School can operate and accept all pupils of said town who are entitled to high school education at a substantial saving in the cost of such education to the town. It is not impossible to carry out the intention of Mr. Wheeler as a benefactor of his town.

There are difficulties to be sure. One is that nonresident trustees in some cases live at great distances from North Stonington, making it difficult for them to give the time and attention requisite to successful operation of their trust. As was said by one of the experienced witnesses in the case "it does take a lot of time and effort on the part of any board to administer any school." With respect to the problem of operating a small school like The Wheeler School this witness further testified . . . "It is a feasible business proposition but it is going to take ingenuity and interest and determination on the part of the members of the board of trustees." And in the opinion of this witness, which is concurred in by the court, the full burden of high school education can be borne by The Wheeler School if the trustees have "the cooperation and goodwill of the local town authorities."

No authority exists under § 830 to authorize the turning over of the funds of plaintiff corporation to the state board of education.

The court is requested to relieve the trustees of further responsibilities of management of the school and to authorize the payment of income in the form of scholarships to secondary schools, colleges and universities. Nothing is mentioned in the suit about the real estate belonging to the school, and no request is made concerning its disposition.

If any such relief is to be granted as prayed for in the case, it can be allowed only through the application of the doctrine of cy pres and the exercise of a prerogative right of a court of equity. Cy pres is that doctrine by which a charitable fund, being impossible of application according to the intention of the donor, shall be applied, as nearly as may be, according to his intention. *First Congregational Society* v. *Bridgeport,* 99 Conn. 22, 32. The power of applying the cy pres doctrine in Connecticut, while apparently recognized as existing among the general equitable powers of the court, has nevertheless been adopted by statute, and since 1886 has formed a definite part of our law. *Bristol Baptist Church* v. *Connecticut Baptist Convention,* 98 Conn. 677; General Statutes § 5925.

The statute apparently is not as broad as the equitable doctrine of cy pres, inasmuch as the right to disposition of real estate held under a charitable trust may be exercised, under the statute, only when the execution of the donor's intention becomes impossible "by reason of a change of circumstances, or in the condition of such real estate." *Babcock* v. *African Methodist Episcopal Zion Society,* 92 Conn. 466, 474.

If it becomes necessary, the court may appoint trustees. A trust will not be allowed to fail for want of a trustee to administer it. *Dailey* v. *New Haven,* 60 Conn. 314; *Babcock* v. *African Methodist Episcopal Zion Society,* supra, 473.

The dominant purposes of the donor in this case was to provide not only for secondary education of resident children of North Stonington, but to provide such education in a school bearing his name and located in said town. To this end he had a specially chartered school and library corporation created to which gifts of land and money could be made. The facts do not support the claim that the intention of the donor is impossible of fulfillment. The evidence indicates that with such help as the town is willing to provide, the school can function in accordance with the donor's intention and provide a good education for the children whom the donor sought to benefit.

The prayers for relief by the plaintiff are denied.

Judgment may enter accordingly.